## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) CALEB SALMON | ) |
| | ) |
|     Plaintiff, | ) |
| | ) Case No. 14CV-265-CVE-TLW |
| vs. | ) |
| | ) |
| 1) CRST EXPEDITED, INC. *et al*, | ) |
| | ) |
|     Defendants. | ) |
| | ) |
| | ) |

## DEFENDANT NUTRA PHARMA CORP.'S MOTION FOR
## SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

Defendant Nutra Pharma Corp. ("Nutra Pharma") hereby files this Motion to assess sanctions against Plaintiff Caleb Salmon ("Plaintiff"), and in support thereof, states as follows:[1]

### BACKGROUND

**I.  Procedural History**

1. On May 23, 2014, Plaintiff filed his original Complaint (the "Original Complaint") in this action. The Original Complaint asserted six (6) causes of action against seventeen (17) defendants and generally alleged that these defendants made unsolicited telephone calls and/or text messages to Plaintiff in violation of federal and Oklahoma law.

2. The Original Complaint named ten (10) "John Doe" defendants whose conduct and identity Plaintiff described with relative particularity – the Original Complaint includes the telephone numbers, e-mail addresses, and screenshots/transcripts of the allegedly unsolicited messages supporting Plaintiff's claims.

---

[1] In accordance with Fed. R. Civ. P. 11, this Motion is not being filed with the Court until the expiration of 21 days from the date of service upon Plaintiff. If the claims asserted against Nutra Pharma in the First Amended Complaint are not dismissed with prejudice within 21 days from the date hereof, the Motion will be filed.

3. Generally speaking, the Original Complaint alleges that the content of these unsolicited messages is "financial" in nature – e.g., offers to reduce Plaintiff's credit card interest rates, 'get rich quick' offers, etc.

4. As the Court is well-aware, Plaintiff was given extraordinary leeway in the months after filing the Original Complaint to discover the identities of the various John Doe defendants named in the Original Complaint. Indeed, the docket indicates that Plaintiff took full advantage of discovery through the issuance of subpoenas to a variety of telephone and internet service providers (see, e.g. D.E. 15, 35).

5. Indeed, fully understanding the ramifications and potential consequences of naming improper parties to substitute for his "John Doe" defendants, Plaintiff stated, in his September 22, 2014 Motion for Severance of Defendants 4-17 and Extension of Time to Discover and Serve Doe Defendants [D.E. 35], as follows:

> Plaintiff does not want to risk naming innocent intermediaries, so he requests more time to confirm the identities of the proper defendants and amend his Complaint accordingly.[2]

6. On November 10, 2014, Plaintiff filed his Motion for Leave to File First Amended Complaint, Motion to Substitute Parties, and Renewed Motion for Extension of Time to Serve Doe Defendants Now Identified (the "<u>Motion for Leave to Amend</u>") [D.E. 41]. The Motion for Leave to Amend contends that, after being allowed approximately six months to sort out the identities of the John Doe defendants, Plaintiff finally got it right.

7. With respect to Nutra Pharma, the Motion for Leave to Amend alleges as follows:

> The numbers 256-970-2626 and 203-295-7551 solicited Plaintiff to go to the websites "yourtotalcashcontrol.com" and "totalcashcontrol.com." A successful subpoena to GoDaddy.com revealed the identity of the owner of those websites as Steve Gewecke, president of MyNyloxin which sells Nutra Pharma Corp

---

[2]   See D.E. 35, ¶ 9.

products and unregistered securities by telemarketing. Exhibit 2; Exhibit 3; Exhibit 4.[3]

8.     In following the Motion for Leave to Amend, the method by which Plaintiff identified Nutra Pharma as one of the John Doe defendants responsible for making unsolicited calls to Plaintiff is, in a word, absurd. According to Plaintiff, he (1) received unsolicited calls from 256-970-2626 and 203-295-755; (2) in calling those phone numbers, Plaintiff was solicited to visit the websites "yourtotalcashcontrol.com" and "totalcashcontrol.com;" (3) Plaintiff identified the owner of those websites as co-defendant Steve Gewecke; (4) among other corporate titles with other companies, Mr. Gewecke is the President of MyNyloxin; (5) MyNyloxin distributes Nutra Pharma's products (among others, a pain product known as "NyLoxin").[4]

9.     According to the logic of the Motion for Leave to Amend, this translates into Nutra Pharma being responsible for telephone calls selling a product that Nutra Pharma does not sell, on a website that Nutra Pharma does not own, by an individual that is not a director, officer, or employee of Nutra Pharma. The Motion for Leave to Amend is essentially advocating that liability exists through the six degrees of separation.[5]

10.    After being allowed approximately six months of discovery, Nutra Pharma is a defendant in this action as the result of Plaintiff visiting Mr. Gewecke's LinkedIn page (which lists his affiliations with certain marketing companies) and casting a net wide enough to not only snare those companies but also any companies loosely associated therewith.

11.    On December 11, 2014, following the Court's granting of the Motion for Leave to Amend, Plaintiff filed his First Amended Complaint [D.E. 49]. The First Amended Complaint

---

[3]    See D.E. 41, ¶ 10.
[4]    Id., ¶ 10.
[5]    See http://en.wikipedia.org/wiki/Six_degrees_of_separation

contains the same allegations as the Original Complaint (regarding receipt of unsolicited 'get rich quick' calls and offers to lower credit card interest rates), but now alleges that Nutra Pharma (among others) is responsible for these calls.

12. Although the causes of action are the same as the Original Complaint, the First Amended Complaint now also includes certain scandalous and spurious allegations that Nutra Pharma (a public corporation with fiduciary obligations to its shareholders and reporting requirements to the SEC) is "engaged in the sale of unregistered securities."[6] These allegations are reckless at best, have no relation to any of the claims Plaintiff has asserted in the First Amended Complaint, and appear to be included solely to harass Nutra Pharma and leverage a settlement in this action.[7]

## II. The Plaintiff

13. Plaintiff is, to date, proceeding pro se in this action. That is not to say, however, that Plaintiff is a stranger to the law or the requirements of the Federal Rules of Civil Procedure (Rule 11 in particular).

14. As set forth on Plaintiff's LinkedIn page:

> I am a Licensed Legal Intern at Stoops & LaCourse as I finish my studies at the University of Tulsa School of Law. My responsibilities include legal research, factual investigation, and drafting of pleadings, motions and discovery. My preferred area of practice is complex litigation on behalf of the "little guy." I enjoy helping people whose cases I can believe in, and find the challenges of law school and legal practice invigorating.[8]

15. Plaintiff is a third year law student and, pursuant to Oklahoma law, should be

---

[6] See D.E. 49, ¶ 47 – 52.

[7] Nutra Pharma is capable of conducting the same "diligence" that Plaintiff did before bringing his claims – i.e. visiting Plaintiff's LinkedIn page. Plaintiff apparently believes himself qualified to make serious and far-reaching allegations regarding the sale of unregistered securities by virtue of him spending *six (6) months* as a financial advisor for Wells Fargo. See www.linkedin.com/in/calebsalmon.

[8] See www.linkedin.com/in/calebsalmon

under the supervision of an attorney at Stoops LaCourse PLLC with respect to his legal endeavors. Plaintiff even lists his address for purposes of service in this action as the business address of Stoops LaCourse PLLC.[9]

16. Even a cursory review of Plaintiff's filings in this action reveals that Plaintiff is quite familiar with legal argument and case citations, and therefore Plaintiff cannot plead some form of ignorance or unfamiliarity with the law's requirements in escaping sanctions in this matter.

### III. Nutra Pharma

17. As stated above, Nutra Pharma is a public corporation and, as such, is required to file certain disclosures and statements with the SEC (which Plaintiff, as a former financial advisor), was certainly aware of prior to filing the First Amended Complaint.

18. While the allegations of the First Amended Complaint concern unsolicited calls regarding 'get rich quick' and credit card interest rate reduction offers, there is no dispute that this is not the business of Nutra Pharma. Plaintiff needed look no further than Nutra Pharma's SEC disclosures to determine that Nutra Pharma was an inappropriate defendant in this action. Indeed, Nutra Pharma's most-recent 10-K[10] disclosure describes the business of Nutra Pharma as follows:

> We are a biopharmaceutical company that engages in the acquisition, licensing and commercialization of pharmaceutical products and technologies as well as homeopathic and ethical drugs for the management of pain, neurological disorders, cancer, autoimmune and infectious diseases….
>
> Our wholly owned subsidiary and drug discovery arm, ReceptoPharm, has carried out our homeopathic and drug discovery research and clinical development and has fully developed three homeopathic drugs for the treatment of pain:

---

[9] See http://www.stoopslacourse.com/Contact.shtml.
[10] See https://www.sec.gov/Archives/edgar/data/1119643/000114420414019555/v372614_10k.htm.

- Cobroxin®, an over-the-counter pain reliever designed to treat moderate to severe (Stage 2) chronic pain; and
- Nyloxin® and Nyloxin® Extra Strength: stronger versions of Cobroxin®

19. Conspicuously absent from Nutra Pharma's 10-K is any mention of a business line involving telephone marketing to sell financial products such as those alleged in the First Amended Complaint.

20. Moreover, to the extent Plaintiff believes that Mr. Gewecke is secretly an officer or director of Nutra Pharma (though it is difficult to understand how that, in and of itself, would somehow give rise to liability on the part of Nutra Pharma), the 10-K again debunks any such notion. Mr. Gewecke is not listed as an officer or director of Nutra Pharma in the 10-K because, quite simply, he is not.

21. Further, with respect to Plaintiff's 'six degrees of separation' argument that Mr. Gewecke is affiliated with MyNyloxin.com, MyNyloxin.com distributes Nutra Pharma's products, and therefore Nutra Pharma must be responsible for the alleged unsolicited calls, this too is debunked by a quick perusal of the same 10-K:

> In December of 2013, we announced an agreement with MyNyloxin.com for the exclusive rights to market and distribute Nyloxin® in the Network Marketing channel. MyNyloxin.com provides a business opportunity to their Distributors to earn commissions on the sale of our products through their Distributor groups. In January of 2014, we announced the first product shipments to the MyNyloxin Independent Entrepreneurs (MIEs). MyNyloxin conducts webinars, conference calls and live meetings to support recruitment of new MIEs as well as to provide product and business education

22. As set forth in the 10-K, MyNyloxin.com served as a distributor of Nutra Pharma's products. It was not a subsidiary of Nutra Pharma, it did not share any common ownership and/or management, and it certainly was never marketing financial products or services (that Nutra Pharma does not even sell or engage in) on Nutra Pharma's behalf.

23. Had Plaintiff actually bothered to read Nutra Pharma's public disclosures (rather than expounding on his vast knowledge of securities law), Nutra Pharma would not have been forced to incur unnecessary fees and costs in defending itself in a foreign jurisdiction in an action clearly designed to extort a quick settlement.[11]

## ARGUMENT

### IV. Legal Standard

A district court may impose sanctions pursuant to a party's motion or sua sponte. See Fed. R. Civ. P. 11(c)(1)(A)-(B). When determining whether sanctions are appropriate, a district court applies an objective reasonableness test – regardless of whether the party is appearing pro se or represented by an attorney. See White v. Gen. Motors Corp., 908 F.2d 675, 683 (10th Cir. 1990). Imposition of sanctions is mandatory, however, once it is determined that a Rule 11 violation has occurred. McNeal v. Zobrist, No. 04-2149-JAR, 2006 WL 2692816, at *8 (D. Kan. Sept. 18, 2006). Finally, a plaintiff proceeding pro se is not excused from complying with rule 11's requirements. See Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."). Both Rule 11's plain language and the United States Court of Appeals for the Tenth Circuit's caselaw demonstrate that "[p]ro se status does not provide litigants with a license to file baseless pleadings that serve to 'clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." Adams v. New Mexico, Nos. 90-2158 & 90-2190, 1991 WL 35222, at *2 (10th Cir. Feb. 22, 1991); see

---

[11] Of course, the distribution relationship between MyNyloxin.com and Nutra Pharma should not even come into play as Plaintiff has not alleged that unsolicited calls were made to him offering to sell Nutra Pharma products. Rather, he has alleged that he received unsolicited calls for products and services wholly unrelated to the business of Nutra Pharma, but that the person allegedly responsible for those calls (Mr. Gewecke) *also* has an affiliation with MyNyloxin.com which *also* has an affiliation with Nutra Pharma. Unless undersigned counsel missed the particular lesson in law school, "guilty by association" is not part of US jurisprudence.

Fed. R. Civ. P. 11(b) (imposing same standard on both attorneys and "unrepresented part[ies]").

## V. Plaintiff Should be Sanctioned

Plaintiff should be sanctioned by the Court for violation of Fed. R. Civ. P. 11(b)(2) and (3) as the claims asserted by Plaintiff against Nutra Pharma are wholly devoid of legal and/or factual support. Plaintiff asserts various claims against Nutra Pharma (including alleged violations of the TCPA and 'vicarious liability'), all predicated on the same allegations discussed above. In short, Plaintiff claims that he was aggrieved by receiving unsolicited phone calls and text messages from various parties. With respect to the claims asserted against Nutra Pharma, Plaintiff claims that he received calls relating to certain 'get rich quick' and credit card interest rate offers and that Nutra Pharma was somehow behind these calls or vicariously liable for them.

Plaintiff's claims against Nutra Pharma are nonsensical and, at least with respect to the allegations regarding unregistered securities, likely constitute business disparagement under the Lanham Act.[12] Whether termed 'guilty by association' or 'six degrees of separation,' Plaintiff's theories of recovery against Nutra Pharma fail to offer any basis in law or fact for holding Nutra Pharma liable for the actions of third party entities or individuals acting solely for their own financial benefit. The First Amended Complaint alleges that Plaintiff received unsolicited calls relating to 'get rich quick' and credit card interest rate offers. Nutra Pharma does not engage in these businesses but rather sells over-the-counter pain medication. Plaintiff alleges that the phone numbers that made unsolicited calls to Plaintiff are tied to the websites "yourtotalcashcontrol.com" and "totalcashcontrol.com."[13] Nutra Pharma has no association with these websites. Plaintiff alleges that co-defendant Steve Gewecke is the owner of the

---

[12] See 15 U.S.C. 1125(a)(1)(B).
[13] See D.E. 41, ¶ 10.

aforementioned websites.[14]  Mr. Gewecke is not an employee, officer, or director of Nutra Pharma.

Finally, Plaintiff alleges that, in addition to the above websites/businesses, Mr. Gewecke is also President of MyNyloxin.com, an unincorporated group of professional marketers that sell Nutra Pharma's products.  That much is true, but it is also wholly irrelevant to Plaintiff's claims (unless the Court accepts Plaintiff's 'guilty by association' theory of recovery).  Plaintiff has not even alleged that he was contacted/solicited on behalf of MyNyloxin.com, Nutra Pharma, or any product even remotely related to Nutra Pharma.  But even assuming Plaintiff had alleged that MyNyloxin.com contacted him (he does not), his claims against Nutra Pharma would still be without merit as MyNyloxin.com is simply a distributor of Nutra Pharma's products with its own separate corporate existence.

Plaintiff's argument in this regard is akin to holding Anheuser-Busch liable because a grocery store (its distributor) sold beer to a minor.  Of course, Plaintiff's argument takes this absurdity two steps further – Plaintiff would hold Anheuser-Busch (Nutra Pharma) liable because the grocery store's (Mr. Gewecke) commonly-owned furniture store affiliate ("yourtotalcashcontrol.com" and "totalcashcontrol.com) sold a defective couch to Plaintiff.  Accepting this argument would require the Court to ignore both reason and hundreds of years of jurisprudence.

Plaintiff's conduct in haphazardly naming defendants to this action on a whim should not be excused by the Court on account of Plaintiff's pro se status.  Plaintiff is a law student, a licensed legal intern, and is operating under the supervision of practicing attorneys with dozens of years in experience litigating cases such as these.  There is no excuse for Plaintiff's reckless disregard of governing law in an apparent effort to obtain maximum settlement value by simply

---

[14]    Id.

naming a laundry list of defendants.  Plaintiff himself recognized the potential repercussions in improperly identifying his "John Doe" defendants, and yet after nearly seven months from the date the Original Complaint was filed that is precisely what Plaintiff did.  The Court should sanction Plaintiff in an amount sufficient to deter this type of reckless conduct and to compensate Nutra Pharma for its fees and costs in being forced to defend this meritless action in foreign jurisdiction.

## CONCLUSION

WHEREFORE, Nutra Pharma respectfully requests that the Court enter an Order:

1. Granting this motion for sanctions pursuant to Fed. R. Civ. P. 11 against Plaintiff;[15]

2. Awarding Nutra Pharma its attorneys' fees incurred, and to be incurred, in this matter; and

3. Granting such other relief as is necessary and proper

Dated: March 4, 2015.

Respectfully submitted,

/s/ Thomas M. Askew
Thomas M. Askew, OBA #13568
RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS
502 West 6th Street
Tulsa, OK  74119-1010
(918) 587-3161
(918) 587-9708 (Facsimile)
taskew@riggsabney.com
*Attorneys for Nutra Pharma Corporation*

---

[15] The Court may also wish to inquire to what extent Plaintiff's supervising attorneys at Stoops LaCourse PLLC played a role in the preparation and filing of the Complaint and First Amended Complaint.

/s/ Daniel DeSouza  
Daniel DeSouza, Esq.  
Florida Bar No.: 19291  
DESOUZA LAW, P.A.  
1515 N. University Drive  
Suite 209  
Coral Springs, FL 33071  
Telephone: (954) 551-5320  
DDesouza@desouzalaw.com  
*Attorney for Nutra Pharma Corporation*  
***pro hac vice admission pending***

## CERTIFICATE OF SERVICE

This will certify that on the 4th day of March, 2015, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants:

Caleb Matthew Salmon – salmonlegis@gmail.com  
Stuart Campbell – scampbell@dsda.com  
Matthew Christensen – mchristensen@dsda.com  
David Herrold – dherrold@dsda.com

/s/ Thomas M. Askew