UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

CALEB SALMON,[1]            )
                            )
        Plaintiff,          )
                            )
v.                          )   Case No. 14-CV-0265-CVE-TLW
                            )
CRST EXPEDITED, INC., et al.,)
                            )
        Defendants.         )

# OPINION AND ORDER

Now before the Court are the following motions: the Combined Motion for Summary Judgment and Brief in Support of Defendant, CRST Expedited, Inc. (Dkt. # 42); Plaintiff's Combined Motion for Summary Judgment and Brief in Support (Dkt. # 61); the Motion to Strike Facts and Evidence Contained in Plaintiff's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 75); and the Joint Motion to to [sic] Sever Claims against this Defendant [Nutra Pharma Corp.] (Dkt. # 99). Defendant CRST Expedited, Inc. (CRST) argues that plaintiff Caleb Salmon consented to receive communications on his cellular telephone (cell phone) about employment opportunities with CRST, and CRST claims that it is not liable to plaintiff under state or federal law for contacting him on his cell phone. Plaintiff argues that CRST made a dual purpose communication to his cell phone without his express written consent to receive an autodialed call, and he asserts that he is entitled to summary judgment on his claims.

---

[1] Plaintiff has modified the case caption on his filings and he identifies the plaintiff only as "Salmon." Although plaintiff is proceeding pro se, he is obligated to follow the Federal Rules of Civil Procedure like all other litigants and, under Fed. R. Civ. P. 15(a), he may not modify the case caption without filing a motion to amend or correct the case caption. See Weiss Acquisition, LLC v. Patel, 2013 WL 45885 (D. Conn. Jan. 3, 2013) (plaintiff may modify the case caption only by obtaining leave of court to amend the complaint under Rule 15).

# I.

CRST is an interstate trucking company and it employs individual truck drivers across the country to transport goods. Dkt. # 42-1, at 1. Salmon has a commercial driver's license (CDL), has previously worked as a commercial truck driver, and in 2006 was seeking employment as a truck driver. Dkt. # 42-2, at 2-3; Dkt. # 43-1, at 1. Salmon contacted numerous trucking companies concerning employment opportunities, and CRST received information that Salmon was looking for employment as a truck driver. Id. CRST received this information from either a direct request to CRST or from a recruiting website, but Salmon provided his name, mailing address, home phone number, cell phone number, and email address to CRST. Dkt. # 42-1, at 3; Dkt. # 61, at , at 31. Salmon states that he did not consent to receive calls from an automated dialing system when he provided this information. Dkt. # 43-1, at 2.

Salmon received two calls on his cell phone about his interest in employment as a truck driver, and he claims that he received the calls on February 21 and March 3, 2014. The parties do not dispute that the calls were made by an automated dialing system, and Salmon claims that the message stated:

> CRST is launching its largest pay increase ever. Are you interested in free Class A CDL training? As a CRST student in their expedited division, you will receive the best training in the business. Get your Class A CDL in as little as two weeks and you are guaranteed a job once our training is complete. Join now and you will also receive a $200.00 sign-on bonus. Once you are on the road, CRST will provide the most miles possible, which means more money for you. Are you an experienced truck driver? If so, CRST offers the most miles you can legally run and the opportunity to earn even more as a driver trainer. Ask the recruiter about the new pay increase. Call CRST at 866-793-4244.

Dkt. # 49, at 5. CRST states that it uses an autodialing system to send employment ads to persons that have already made an inquiry about employment with CRST, and the purpose of the

employment ad is to provide information to potential truck drivers. Dkt. # 42-1, at 2. CRST does not purchase call lists or collect phone numbers from third parties. Id. The parties do not dispute that the only ways CRST obtains a phone number for a prospective driver is from an inquiry to the CRST website, a multi-company recruiting website, or from a CRST recruiter. Id. After Salmon received these calls, he sent a letter to CRST advising it that his phone number was on the federal Do-Not-Call list and he alleged that CRST had violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (TCPA). Salmon claimed that he intended to file a lawsuit against CRST but he would agree to settle his claims against CRST for $4,000. Id. at 4. After receiving Salmon's letter, CRST removed Salmon's cell phone number from its recruiting autodialing call list, and Salmon did not receive any more calls from CRST. Id. at 6.

On May 23, 2014, Salmon filed this case alleging that CRST and others had violated the TCPA, and Salmon is proceeding pro se.[2] Plaintiff alleges claims against CRST under the TCPA and the Oklahoma Consumer Protection Act, OKLA. STAT. tit. 15, § 752 et seq. (OCPA), and he also alleges claims of invasion of privacy, aggravation and loss of time, and negligent hiring.[3] Plaintiff claims that the employment ad he received on his cell phone is actually a promotional ad for a driving school and that CRST has a financial arrangement with the driving school under which CRST keeps a portion of the tuition for referring drivers to the school. Dkt. # 43, at 8; Dkt. # 61, at 9. Salmon has attached a copy of the driver training agreement that would be signed by an

---

[2] Although Salmon is proceeding pro se, Salmon states that he is a third year law student at the University of Tulsa College of Law and that he is a licensed legal intern. Dkt. # 42-3.

[3] Plaintiff fails to make any argument concerning his aggravation and loss of time claim or his negligent hiring claim, and he also failed to include these claims in the joint status report (Dkt. # 24) and the proposed pretrial order. It appears that plaintiff has abandoned these claims, but the Court will briefly discuss these claims in this Opinion and Order.

3

applicant to the driving school, and he argues that CRST falsely represented to applicants that employment with CRST is guaranteed upon completion of the driving school. However, he has submitted no evidence suggesting that he attended or even contemplated attending the driving school, and he does not claim to have suffered an injury from the alleged misrepresentations made by CRST in the employment ad he received on his cell phone.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

4

reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

CRST requests summary judgment on plaintiff's TCPA claim on the grounds that the employment ad received by plaintiff was not "telemarketing" as that term is defined in the TCPA and that plaintiff gave his consent to receive communications from CRST. Plaintiff argues that he is entitled to summary judgment on his TCPA claim, because he did not consent in writing to receive autodialed calls from CRST, and that the calls were actually an advertisement for a driving school from which CRST received a financial benefit.

"Congress found that unrestricted telemarketing can be an intrusive invasion of privacy and that many consumers are outraged by the proliferation of intrusive calls to their homes from telemarketers," and the TCPA was enacted to reduce the number of telephone solicitations received by consumers. FTC v. Mainstream Marketing Servs., Inc., 345 F.3d 850, 857 (10th Cir. 2003). Under the TCPA, it is unlawful "for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is . . . exempted by rule or order of the [Federal Communications Commission (FCC)] . . . ." 47 U.S.C. § 227(b)(1)(B). The TCPA also prohibits any person from "mak[ing] a call (other than a call made for emergency purposes or

5

made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ." Id. at (b)(1)(A)(iii). The TCPA creates a private right of action for any person who has received more than one call in a 12 month period from the same entity, but the statute expressly states that the claim shall be brought "in an appropriate court of that State . . . ." Id. at § (c)(5). Although the TCPA states that it creates a private right of action in state courts, the Supreme Court has determined that state and federal courts have concurrent jurisdiction over claims arising under the TCPA. Mims v. Arrow Financial Servs., LLC, 132 S. Ct. 740, 747 (2012).

The FCC has the authority to promulgate rules for the enforcement of the TCPA. Id. at 746. Under the FCC's rules, no person may "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic dialing system . . . , other than a call made with the prior express written consent of the called party . . . ." 47 C.F.R. § 64.1200(a)(2). "Advertisement means any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The characterization of a call does not depend on the caller's perception as to whether the call constitutes a solicitation or advertisement, but the "purpose of the message" is what governs whether an autodialed call is a prohibited solicitation or advertisement. In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC 14014, 14097 (July 3, 2003).

Before considering the parties' arguments as to plaintiff's TCPA claim, the Court will initially determine whether it should consider evidence and arguments concerning the CRST's driving school and pre-employment agreement. Much of plaintiff's argument in support of his TCPA claim is based on his belief that the driving school that is the subject of the advertisement he received is a fraudulent scheme. In fact, he argues that central issue of the case is the "true nature of the 'free' truck driver training school advertised in the message." Dkt. # 89, at 2. However, he has produced no evidence suggesting that he attended the driving school and was harmed or even that he considered attending the driving school, and he acknowledges that he already possesses a valid CDL. Dkt. # 61, at 31. In fact, he would not have been required to attend the driving school if he had sought employment with CRST. Dkt. # 74-1, at 2. Plaintiff's claims against CRST are based on his assertion that he received two unwanted telephone calls made using an autodialing system and that the calls were prohibited under state and federal law. The Court has reviewed the amended complaint (Dkt. # 49) and all of plaintiff's filings in connection with the pending motions for summary judgment, and has found no allegations that he suffered harm from actual or contemplated participation in CRST's driving school. Plaintiff's injury in his case against CRST is limited to the fact that he received two unwanted calls on his cell phone, and the Court will not consider plaintiff's arguments that the driving school described in the calls was itself an unfair consumer practice or was a fraudulent scheme.

> Plaintiff alleges that he received the following message from CRST:
>
> CRST is launching its largest pay increase ever. Are you interested in free Class A CDL training? As a CRST student in their expedited division, you will receive the best training in the business. Get your Class A CDL in as little as two weeks and you are guaranteed a job once our training is complete. Join now and you will also receive a $200.00 sign-on bonus. Once you are on the road, CRST will provide the most miles possible, which means more money for you. Are you an experienced

> truck driver? If so, CRST offers the most miles you can legally run and the opportunity to earn even more as a driver trainer. Ask the recruiter about the new pay increase. Call CRST at 866-793-4244.

Dkt. # 49, at 5. CRST argues that the calls received by plaintiff contained information about possible employment and the calls do not qualify as "telemarketing" or "unsolicited advertisement[s]" under the TCPA. Courts have found that a company's message concerning a possible offer of employment does not constitute telemarketing or an unsolicited advertisement, because no goods or services are being offered for sale by the caller. Freidman v. Torchmark Corp., 2013 WL 4102201, *4 (S.D. Cal. Aug. 13, 2013) (message containing offer to view Internet seminar and sell the caller's products was not an unsolicited advertisement); Lutz Appellate Servs., Inc. v. Curry, 859 F. Supp. 180, 181 (E.D. Pa. 1994) ("A company's advertisement of available job opportunities is not an advertisement of the commercial availability of property").

On its face, the message received by plaintiff offers free job training and employment upon completion of the training. As stated by the FCC, the Court must focus on the purpose of the call rather than plaintiff's perception of the call, and the message plainly contains information about possible employment with CRST. In this case, the person receiving the message is advised that he or she can attend training to receive a CDL license, and the clear implication is that the training would be necessary only if the person does not have a CDL license. The remainder of the message concerns the benefits of employment with CRST and provides information about contacting a CRST recruiter. On its face, the message received by plaintiff offers free job training and employment upon completion of the training. Plaintiff argues that the message is a prohibited "dual purpose" call, because CRST receives a financial benefit when potential truck drivers attend the training mentioned in the message. Dkt. # 43, at 13-17. In Chesbro v. Best Buy Stores, L.P., 705 F.3d 913

(9th Cir. 2012), the Ninth Circuit found that a call could qualify as an unsolicited advertisement or telephone solicitation if the call provided information to a consumer and encouraged the recipient of the call to make future purchases. Id. at 918. Best Buy Stores, L.P. (Best Buy) used an automated dialing system to place calls to persons enrolled in the Best Buy Reward Zone Program (the Program), and the calls provided information about changes to the Program. Id. at 916. However, the call also encouraged members to make purchases at Best Buy stores to avoid losing accrued benefits. Id. The Ninth Circuit found that much of the message was purely informational, but consumers were encouraged to "redeem" their points earned by participating in the Program. Id. at 918. Redeeming the points required the customer to go to a Best Buy store and make a purchase. Id.

This case is distinguishable from Chesbro, because the recipient of the call from CRST was not encouraged to purchase a service from CRST. The call merely advises a person that CRST is looking to hire new drivers and that training is available for persons who do not possess a CDL license. Plaintiff argues that the driver training is not actually "free" due to hidden costs and that CRST receives a fee for referring candidates to the driving school. Dkt. # 43, at 14-17. When considering plaintiff's argument that he received a dual purpose call, the Court will limit its inquiry to the content of the message left on plaintiff's cell phone, and plaintiff's arguments suggesting that the offer of training and employment are fraudulent go beyond the scope of a TCPA claim. "The appropriate inquiry under the TCPA is not whether there is some ancillary commercial benefit to either party, but whether the message is an advertisement which tends to propose a commercial transaction." Physicians Healthsource, Inc. v. Janssen Pharmaceuticals, Inc., 2013 WL 486207 (D.N.J. Feb. 6, 2013). Under plaintiff's theory, CRST's employment advertisement constitutes

9

prohibited "telemarketing" because CRST receives a financial benefit if a person attends the driving school. However, this belief is not based on the contents of the advertisement itself but, instead, plaintiff relies on information gathered from external sources. The call itself does not propose a commercial transaction and it does not even indirectly suggest that the recipient of the call should purchase goods or services from CRST. While plaintiff believes the advertisement was misleading, he was not personally harmed by attending the driving school or by seeking employment with CRST, and those matters are outside the scope of this case. The Court finds that the message received by plaintiff was purely informational in nature and CRST did not engage in prohibited telemarketing that would subject it to liability under the TCPA. CRST is entitled to summary judgment on plaintiff's TCPA claim because it did not engage in any prohibited conduct, and plaintiff's motion for summary judgment on his TCPA claim is denied.

**B.**

CRST argues that it is exempt from liability under the OCPA, because the conduct complained of by plaintiff is governed by a federal agency and this conduct falls within an express exemption to the OCPA. CRST also argues that the conduct at issue is not a consumer transaction and that the OCPA does not apply. Plaintiff responds that the OCPA specifically covers the use of an autodialing system and this specific statutory prohibition should control over the more general exemption for conduct governed by federal law. Dkt. # 43, at 20.

To establish a violation of the OCPA, a plaintiff must show (1) that the defendant engaged in an unlawful practice as defined at [OKLA. STAT. tit. 15, § 753]; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." Patterson v. Beall,

19 P.3d 839, 846 (Okla. 2000). The OCPA specifically provides that "[n]othing in this act shall apply to . . . [a]ctions or transactions regulated under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States . . . ." OKLA. STAT. tit. 15, § 754. Courts interpreting § 754 have found the statutory exemption applicable when the alleged conduct constituting a violation of the OCPA is regulated by a state or federal agency. Thomas v. Metropolitan Life Ins. Co., 540 F. Supp. 2d 1212, 1228 (W.D. Okla. 2008); Huggins v. Four Seasons Nursing Centers, Inc., 2007 WL 3113429 (N.D. Okla. Oct. 22, 2007). However, the exemption does not apply when a defendant's conduct is governed in some respects by a state or federal agency, but the specific conduct at issue is not within the scope of the agency's authority. Conatzer v. American Mercury Ins. Co., Inc., 15 P.3d 1252, 1255 (Okla. Civ. App. 2000). The Oklahoma Court of Civil Appeals has also declined to find a statutory exemption from liability when the consumer does not have a private right of action under the laws enforced by the state or federal agency.[4] Robinson v. Sunshine Homes, Inc., 291 P.3d 628, 634 (Okla. Civ. App. 2010).

There is no dispute that CRST's use of an autodialing system is governed by the FCC, but plaintiff argues that the mere regulation of conduct by a federal agency does not place the defendant's conduct within the statutory exemption from liability under the OCPA. He claims that he does not have a private right of action under the FCC's regulatory scheme, and he asserts that he should be permitted to proceed with a claim under the OCPA. Plaintiff cites Robinson and argues

---

[4] Not all courts agree that a consumer must have a private right of action available under the agency's regulatory scheme for the exemption to apply, but the Court will assume for this Opinion and Order that a private right of action must be available in order to find that the statutory exemption from liability applies. See Trosper v. Travelers Indem. Co. of Connecticut, 2014 WL 6687283 (W.D. Okla. Nov. 26, 2014).

11

that the FCC "grants licenses and performs a few minimal enforcement actions . . . ." Dkt. # 43, at 20. However, plaintiff overlooks the fact that he has a private right of action under the TCPA, and the FCC is responsible for implementing regulations for the enforcement of the TCPA. See Mims, 132 S. Ct. at 746; FTC, 345 F.3d at 857; Hanley v. Green Tree Servicing, LLC, 934 F. Supp. 2d 977 (N.D. Ill. Mar. 21, 2013). CRST's use of an autodialing system is already regulated by the FCC and plaintiff has a private right of action to redress the alleged wrong, and this is precisely the kind of case in which the statutory exemption applies. CRST's use of an autodialing system is regulated by the FCC and it may not be held liable under the OCPA.

## C.

CRST argues that plaintiff cannot prevail under a theory of invasion of privacy by intrusion upon a person's seclusion, because plaintiff provided his contact information to CRST and a reasonable person would not have found CRST's conduct highly offensive. Dkt. # 42, at 21. Plaintiff responds that it was "rude" for CRST to place two calls to his cell phone using an autodialing system and that conduct allegedly in violation of the TCPA should also be considered highly offensive. Dkt. # 43, at 21-22. However, he admits that he "probably entered his information on a generic trucking website" and that CRST legitimately obtained his contact information. Id. at 21.

Oklahoma courts recognize the tort of invasion of privacy by intrusion upon a person's seclusion, and this tort has two elements: "(a) a noncensensual intrusion (b) which was highly offensive to a reasonable person." Gilmore v. Enogex, Inc., 878 P.2d 360, 366 (Okla. 1994). This tort is not available for every intrusion upon a person's privacy, and the Oklahoma Supreme Court has noted that "[t]here is simply no room in the framework of our society for permitting one party

12

to sue on the event of every intrusion into the psychic tranquility of an individual." Munley v. ISC Financial House, Inc., 584 P.2d 1336, 1338 (Okla. 1978). An intrusion occurs only when "an actor 'believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" Dubbs v. Head Start, Inc., 336 F.3d 1194, 1221 (10th Cir. 2003). Oklahoma courts refer to Restatement (Second) of Torts § 652B in considering the scope of invasion of privacy torts, and the Restatement provides the following guidance as to the "highly offensive" element of the tort of invasion of privacy by intrusion upon a person's seclusion:

> There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

RESTATEMENT (SECOND) OF TORTS § 652B cmt. d (1977)

Plaintiff's claim of invasion of privacy fails for two reasons. First, CRST's conduct in this case was at least partially consensual, because plaintiff admits that he voluntarily provided his contact information to a recruiting website for truck drivers and he should have expected to receive calls about potential employment as a truck driver. In any event, CRST could not have been substantially certain that it lacked plaintiff's permission to contact him about potential employment as a truck driver, and there was not a nonconsensual invasion on plaintiff's seclusion. Second, a reasonable person would not have found CRST's conduct "highly offensive." CRST placed two calls to plaintiff's cell phone and plaintiff did not answer either call. CRST left a pre-recorded message on plaintiff's phone, and plaintiff contacted CRST to remove himself from CRST's call list. CRST complied with plaintiff's request and he did not receive any more calls. The mere fact that

13

CRST used an autodialing system to place the calls does not make CRST's conduct highly offensive to reasonable person, and there is no evidence that CRST engaged in persistent or constant behavior that could be deemed a substantial intrusion on plaintiff's privacy. CRST is entitled to summary judgment on plaintiff's invasion of privacy claim.

**D.**

Plaintiff has also alleged state law claims for aggravation and loss of time and negligent hiring against CRST. CRST argues that Oklahoma courts do not recognize an independent claim for aggravation and loss of time. Dkt. # 42, at 19 n.13. Neither CRST nor plaintiff has made any argument concerning plaintiff's negligent hiring or supervision claim, and it appears that plaintiff has abandoned this claim.

In his amended complaint, plaintiff alleges a claim for aggravation and loss of time, and he cites Fuller v. Sight 'N Sound Appliance Centers, Inc., 982 P.2d 528 (Okla. Civ. App. 1999). Dkt. # 49, at 13. However, Fuller does not stand for the proposition that aggravation and loss of time is an independent claim for relief under Oklahoma law, and it merely supports an argument that aggravation or loss of time could be compensable elements of damages under the OCPA. Id. at 533. The Court has independently researched the issue and has found no authority supporting the proposition that alleged aggravation and loss of time provides an independent claim for relief, and this is not a cognizable claim under Oklahoma law. Plaintiff has also alleged a claim of "Negligent, Wanton, And/Or Intentional Hiring and Supervision of Incompetent Agents," and he argues that CRST should be liable for hiring persons who would commit violations of the TCPA or for failing to properly supervise those persons. Dkt. # 49, at 13-14. The Court has found that CRST has not violated the TCPA, and consequently its agents have also not committed violations of the TCPA.

In fact, CRST's employees promptly removed plaintiff's name from CRST's call lists when he notified CRST that he did not wish to receive calls about possible employment with CRST, and this shows that CRST's agents were actively working to prevent violations of the TCPA. The Court finds no evidence to support plaintiff's claim of negligent hiring or supervision.

## IV.

Defendant Nutra Pharma Corp. (Nutra) has filed a motion to dismiss for failure to state a claim upon which relief can be granted (Dkt. # 91) and a motion for sanctions (Dkt. # 86), and Nutra and plaintiff have jointly move to sever plaintiff's claims against Nutra from the remainder of the case. Dkt. # 99. To the extent that these parties ask to sever plaintiff's claims against Nutra from the remainder of the case, that request is moot due to the Court's ruling on CRST's and plaintiff's motions for summary judgment. It is unclear from the docket sheet if there are any remaining defendants other than Nutra that have entered an appearance and against whom plaintiff intends to prosecute his claims. Even if there are any such defendants, the Court finds that it is appropriate to strike all remaining deadlines, including the pretrial and trial, and enter an amended scheduling order, if necessary, following the Court's ruling on Nutra's pending motions.

**IT IS THEREFORE ORDERED** that the Combined Motion for Summary Judgment and Brief in Support of Defendant, CRST Expedited, Inc. (Dkt. # 42) is **granted,** and Plaintiff's Combined Motion for Summary Judgment and Brief in Support (Dkt. # 61) is **denied**.

**IT IS FURTHER ORDERED** that CRST's Motion to Strike Facts and Evidence Contained in Plaintiff's Motion for Summary Judgment and Brief in Support Thereof (Dkt. # 75) is **moot**.[5]

**IT IS FURTHER ORDERED** that the Joint Motion to to [sic] Sever Claims against this Defendant [Nutra Pharma Corp.] (Dkt. # 99) is **denied**. All remaining deadlines in the scheduling order (Dkt. # 26), including the pretrial conference and trial, are **stricken**. An amended scheduling order will be entered, if necessary, following the Court's ruling on Nutra's motion to dismiss (Dkt. # 91).

**IT IS FURTHER ORDERED** that Defendant CRST Expedited, Inc.'s *Daubert* Motion to Exclude Expert Caleb Salmon (Dkt. # 67), Defendant CRST Expedited, Inc's Motion in Limine to Exclude Evidence Regarding Actions of Other Defendants (Dkt. # 68), Defendant CRST Expedited, Inc.'s Motion in Limine to Exclude all Evidence, Testimony and Argument Relating to other Litigation Involving CRST (Dkt. # 69), Defendant CRST Expedited, Inc's Motion in Limine to Exclude Evidence Regarding Financing of Trucking School and Driving School Employment Contract (Dkt. # 70), Plaintiff's Motion in Limine to Allow Evidence of the Truck Driver Training School Contract and Employment Arrangement Solicited by Defendant (Dkt. # 72), and Plaintiff's Motion in Limine to Exclude the Testimony of his Wife and Classmates (Dkt. # 73) are **moot**.

**DATED** this 25th day of March, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[5] The disputed facts at issue in CRST's motion to strike (Dkt. # 75) concern the driving school and pre-employment agreement, and the Court has found that those matters are irrelevant to the resolution of plaintiff's claims. The disputed facts have no bearing on the Court's ruling, and the motion to strike is moot.