#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   CALEB SALMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 14-CV-265-CVE-TLW |
| | ) | |
| (1)   CRST EXPEDITED, INC., | ) | |
| (2)   DARICK PATTERSON, | ) | |
| (3)   ALAN TURNQUIST, | ) | |
| (4)   ALICIA CROKER/TURNQUIST, | ) | |
| (5)   STEVE GEWECKE, | ) | |
| (6)   MORNINGSTAR MARKETING AND | ) | |
|         CONSULTING LLC, | ) | |
| (7)   MYNYLOXIN GROUP, | ) | |
| (8)   NUTRA PHARMA CORP., | ) | |
| (9)   ALLEN WILSON, | ) | |
| (10) ALOIS RUBENBAUER, | ) | |
| (11) CURT HERRINGTON, | ) | |
| (12) MARK LYON, | ) | |
| (13) TRIFECTA MARKETING GROUP, LLC, | ) | |
|         (FLORIDA), | ) | |
| (14) TRIFECTA MARKETING GROUP, LLC, | ) | |
|         (UTAH), | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

Before the undersigned United States Magistrate Judge for a report and recommendation is Nutra Pharma Corp.'s (NPC) Amended Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). (Dkt. 113). NPC requests that the Court sanction plaintiff in the amount of $8,350.00, and any other relief the Court deems necessary, for asserting meritless claims against NPC. For the reasons set forth below, the undersigned recommends that the Court sanction plaintiff in the amount of $3,000.00 and require plaintiff to speak to law students at The University of Tulsa College of Law about the dangers of filing a lawsuit as a licensed legal intern or as a newly appointed attorney without prior review by an experienced attorney.

## BACKGROUND

While he was a law student, plaintiff filed this case *pro se* on May 23, 2014. (Dkt. 2). Plaintiff alleged that his cell phone number had been on the National Do Not Call Registry since 2008, but that he nevertheless received several unsolicited calls from persons or entities with whom or which he has no personal or business relationship. Id. at 4. In his original Complaint, plaintiff identified several defendants as "John Doe telemarketers" or "John Doe Teletexters," followed by the phone numbers from which plaintiff allegedly received calls and/or texts on his cell phone. Id. at 1-2. Plaintiff asserted claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. (TCPA), and the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 752 et seq. (OCPA). (Dkt. 2 at 9-11). Plaintiff also alleged state law claims of invasion of privacy, aggravation and loss of time, and negligent hiring or supervision. Id. at 11-13. Plaintiff did not name NPC as a party in the original Complaint. Id. at 1-2.

On November 10, 2014, plaintiff filed a motion requesting leave to dismiss the "John Doe" defendants and to substitute several parties as defendants, including NPC. (Dkt. 41). In particular, plaintiff claimed he had identified defendant Gewecke as the owner of certain websites mentioned in messages on his cell phone and, further, that Gewecke was the President of MyNyloxin. Id. at 3. Plaintiff next alleged that MyNyloxin sells products and unregistered securities offered by NPC. Id. The Court granted plaintiff's motion to amend and directed him to serve any new defendants no later than February 9, 2015. (Dkt. 47).

Plaintiff filed his Amended Complaint on December 11, 2014, alleging that several defendants were part of a multi-level-marketing scheme (MLM) to distribute NPC's products and that he received four calls on his cell phone from a member of the MLM. (Dkt. 49 at 6-7). None of the calls mentioned NPC or MyNyloxin; however, plaintiff alleged that the MLM was

marketing an unregistered security called a "media unit." Id. at 8.

NPC filed a motion to dismiss all of plaintiff's claims. (Dkt. 91). NPC also filed a motion for sanctions against plaintiff for filing baseless claims against it. (Dkt. 86). The District Court considered NPC's motion for sanctions and found that plaintiff had no objective basis to believe that NPC was responsible in any way for the calls placed to his cell phone. (Dkt. 112 at 14). The Court further stated, "No reasonable attorney would have brought a claim against NPC based on the information in plaintiff's possession, and plaintiff's claims against NPC are nothing more than an unsupported conspiracy theory based upon many layers of conjecture." Id. The Court thus ordered that plaintiff be sanctioned for bringing frivolous claims against NPC. Id. at 14-15.

In granting NPC's motion for sanctions, the Court observed that the motion did not include any attorney time or billing records. Id. at 15. Accordingly, the Court was unable to determine the amount of attorney fees and expenses incurred by NPC in defending against plaintiff's frivolous claims. Id. For these reasons, the Court referred this matter to the undersigned to determine the appropriate sanction. Id. The Court noted in its order that the appropriate sanction is not limited to a monetary sanction, and that the undersigned should consider the full scope of permissible sanctions when making a recommendation to the Court. Id.

In response to the Court's order, NPC filed an Amended Motion for Sanctions—with substantiating documentation—indicating NPC incurred $8,080.00 in legal fees to defend this lawsuit. (Dkt. 113 at 2).[1] NPC also anticipates a bill for an additional $270.00 in attorney fees in connection with its Amended Motion.[2] Id. NPC requests that the Court award NPC its attorney

---

[1] Riggs, Abney, Neal, Turpen, Orbison & Lewis, PC billed NPC a total of 5.7 hours with hourly rates ranging from $275.00 per hour to $300.00 per hour. DeSouza Law, P.A. billed NPC a total of 21 hours at an hourly rate of $300.00 per hour.

[2] 0.9 hours at a $300.00 hourly rate.

3

fees and costs to defend this matter and such other relief as the Court deems necessary and proper. Id.

Plaintiff filed a response to NPC's Amended Motion for Sanctions, arguing that the factors discussed in White v. Gen. Motors Corp., Inc., 908 F.2d 675, 684-86 (10th Cir. 1990), suggest that the Court should deny NPC's motion. (Dkt. 124 at 3). Specifically, plaintiff argues: (1) NPC's motion contains impermissible block billing and unnecessary tasks, (2) no monetary sanction is required to deter plaintiff from using discovery to fill in "leaps in logic in [plaintiff's] pleadings," (3) plaintiff is unable to pay the amount requested by NPC, and (4) NPC was actually engaged in the conduct for which plaintiff sued. Id. at 3-4. Plaintiff also asserts that he did not act with malice or bad faith. Id. at 5. Finally, plaintiff contends that his inexperience weighs in favor of the Court denying NPC's Amended Motion. Id.

## ANALYSIS

Rule 11 sanctions are intended to serve several purposes: (1) deter future litigation abuse, (2) punish present litigation abuse, (3) compensate victims of litigation abuse, and (4) streamline court dockets and facilitate case management. White, 908 F.2d at 683. "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation." Fed. R. Civ. P. 11 Advisory Committee Note; see also Perez v. Posse Comitatus, 373 F.3d 321, 325-26 (2d Cir. 2004) (discussing a district court's discretion in determining whether sanctions are appropriate). In the event of a monetary sanction, the Tenth Circuit weighs several factors to determine an appropriate amount. White, 908 F.2d at 684-85. At a minimum, a court must consider: (1) the reasonableness of the fees sought, (2) the minimum sanction necessary to deter similar future conduct, and (3) the violator's ability to pay. Id. Additionally, a court may consider: (1) the offending party's history, experience, and ability; (2) the severity of the

violation; (3) the risk of chilling the type of litigation involved; and (4) other factors as deemed appropriate in individual circumstances.[3] Id. at 685. Finally, a court must remain mindful that it should not award a sanction in excess of the "minimum that will serve to adequately deter the undesirable behavior." Id. (quoting Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3d Cir. 1988) (emphasis omitted)).

**Reasonableness of NPC's fees**

As to the reasonableness factor, the injured party must "mitigate costs by not overstaffing, overresearching, or overdiscovering clearly meritless claims." Id. at 684. Moreover, a court should only consider those fees accrued because of the improper behavior and exclude the attorney fees that arose from claims in the pleadings which do not merit sanctions. Id.; In re Kunstler, 914 F.2d 505, 523 (4th Cir. 1990). Here, the District Court found that all of plaintiff's claims against NPC lacked merit. Accordingly, in determining the proper sanction, the Court should consider the entire scope of NPC's efforts to defend this lawsuit. In its Amended Motion for Sanctions, NPC represented that it incurred $8,005.00 in attorney fees based on 26.7 hours billed in this case; it also anticipates an additional $270.00 bill for 0.9 hours spent preparing its Amended Motion for Sanctions. NPC further represented that it expended $75.00 in costs. In total, NPC seeks reimbursement of $8,350.00 in attorney fees and costs associated with defending this lawsuit. The undersigned has reviewed NPC's affidavits and billing records and finds them to be reasonable.

---

[3] The Third Circuit relies on similar factors: the attorney's history of filing frivolous actions, the defendant's need for compensation, the degree of the frivolous action involved, whether the frivolousness indicated that a less than sophisticated or expensive response by the injured party was required, and the importance of not discouraging the same type of litigation in the future. Doering v. Union Cty. Bd. Of Chosen Freeholders, 857 F.2d 191, 197 n.6 (3d Cir. 1988).

5

**Minimum sanction necessary**

"The primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs in defending a frivolous suit." White, 908 F.2d at 685. Moreover, "the amount of sanctions is appropriate only when it is the '*minimum* that will serve to *adequately* deter the undesirable behavior.'" Id. (citing Doerning, 857 F.2d at 196) (emphasis in original). On February 25, 2016, the undersigned held a hearing during which plaintiff openly admitted that he intended to use discovery to fill in inferential leaps in logic in his pleadings. Plaintiff further represented that he will refrain from employing such tactics in future litigation. Plaintiff's admission weighs in favor of a lower sanction; however, plaintiff also stated during the hearing that, even in hindsight, he would file the same suit against NPC again, but only after conducting a more reasonable inquiry. This statement suggests that plaintiff's sanction should be reduced by less than his admission would otherwise warrant. Additionally, the fact that sanctions are not intended to compensate a defendant for its costs suggest that plaintiff's sanction should be less than the total attorney fees incurred by NPC if that is an amount that will deter future misconduct.

**Plaintiff's ability to pay**

Due to their deterrent purpose, "Rule 11 sanctions are analogous to punitive damages." White, 908 F.2d at 685. Thus, the violator's ability to pay is a necessary consideration, "not because it affects the egregiousness of the violation, but because the purpose of monetary sanctions is to deter attorney and litigant misconduct." In re Kunstler, 914 F.2d at 524. A smaller sanction against a violator who is unable to pay will have as much a deterrent effect as a large sanction against a violator with substantial financial resources. During the February 25, 2016 hearing, plaintiff represented to the undersigned that he is unable to pay the full amount of

NPC's attorney fees. Plaintiff substantiated his claim by submitting recent financial statements of his current solo law practice as well as recent statements from his personal checking accounts.[4] Plaintiff also represented that he has over fifty thousand dollars in outstanding law school loans. Based on plaintiff's testimony, the undersigned is convinced that plaintiff is in fact unable to pay the entire amount of NPC's fees and costs.

**Discretionary factors**

Of the several discretionary factors enumerated in White, two are especially relevant here: (1) the offender's history, experience, and ability, and (2) a factor that is unique to this particular circumstance—that the District Court's order granting NPC's motion for sanctions was recently published.

Plaintiff's history, experience, and ability

As previously discussed, plaintiff filed this lawsuit *pro se* while he was a law student. Plaintiff should have learned from his civil procedure course that filing a lawsuit prior to conducting an inquiry reasonable under the circumstances and concluding that the factual contentions supporting claims have evidentiary support amounts to sanctionable conduct under Rule 11. Nevertheless, a law student might reasonably lack a full understanding of these obligations. Thus, plaintiff's inexperience in the actual practice of law weighs in favor of imposing a lesser sanction than if plaintiff had been a seasoned attorney when he filed the Amended Complaint. Thus, the undersigned finds that this factor weighs in favor of a lesser sanction.

---

[4] Based on the financial statements, between October 2015 and February 2016, plaintiff's law firm generated $8,990.25 in revenue and incurred $5,273.99 in expenses; its balance sheet as of February 24, 2016 indicates total assets in the amount of $566.26. Plaintiff's checking account statements indicate that his household deposits and withdraws roughly $4,000.00 per month.

### The District Court's Order

Lastly, the District Court's Order granting NPC's motion for sanctions was recently published and is currently available on Westlaw. See Salmon v. CRST Expedited, Inc., No. 14-CV-0265-CVE-TLW, 2016 WL 47876 (N.D. Okla. Jan. 1, 2016). As a result, plaintiff's error is fully exposed to and viewable by the legal community. While plaintiff, as a newly admitted attorney, will undoubtedly have opportunities to restore his credibility throughout his career, the fact that his sanctionable conduct is publicly available will likely negatively affect his professional reputation—and in turn the profitability of his business—in the short term. Such consequences serve as a deterrent in and of themselves. Therefore, the undersigned finds that the publication of the District Court's order weighs in favor of imposing a lesser sanction on plaintiff.

### Amount of Sanction

Although there are many factors mitigating against a large monetary sanction here, plaintiff's misconduct was serious. The filing of frivolous claims undermines the legitimacy of the legal process and results in the allocation of scarce judicial resources away from areas where they are needed, not to mention the time and expense incurred by the victimized defendant. Based on the undersigned's knowledge of the legal market in this District, it is likely that plaintiff, as a solo practitioner recently out of law school, bills his time at a rate that is between $100.00 and $150.00 per hour. The undersigned finds that an appropriate monetary sanction would be three days of work utilizing the middle of this scale. Any lesser amount would fail to impress upon plaintiff the seriousness of his conduct, and any larger amount runs the risk of being inconsistent with the principle that a monetary sanction should not exceed what is necessary to deter future misconduct. Accordingly, the undersigned recommends that the Court

sanction plaintiff in the amount of $3,000.00.

**Non-Monetary Sanctions**

In its order granting NPC's Motion for Sanctions against plaintiff, the District Court advised that the appropriate sanction is not limited to a monetary sanction, and that the undersigned should consider the full scope of permissible sanctions when making a recommendation to the Court. Prime examples of non-monetary sanctions include imposing filing restrictions and requiring participation in seminars or other educational programs.

Filing Restrictions

The Tenth Circuit recognizes that a litigant has no absolute or unconditional right of access to the courts, particularly with regard to frivolous or vexatious actions. Tripati v. Beaman, 878 F.2d 351 (10th Cir. 1989) (per curiam). Accordingly, under certain circumstances, a district court may place appropriate restrictions on litigants with a history of abusive or frivolous filings." Id. at 353. Prior to imposing restrictions, however, a court must set forth a litigant's history of abusive filing activities, provide guidance as to what the litigant must do to obtain the court's permission to file an action, and give the litigant notice and an opportunity to respond. Id. at 353-54; see also Andrews v. Heaton, 483 F.3d 1070, 1077 (10th Cir. 2007) (discussing similar prerequisites to imposing filing restrictions); see also In re Raiser, 293 F. App'x 619, 622 (10th Cir. 2008) (unpublished) (affirming a Chief Judge's order imposing filing restrictions on plaintiff because, (1) plaintiff established a pattern of submitting frivolous and repetitive filings, and (2) the order satisfied the constitutional requirements the Tenth Circuit set forth in Andrews, 483 F.3d at 1077).

Based on the Tenth Circuit authority cited above, what is especially relevant in cases where a court imposes filing restrictions on Rule 11 violators is whether the violator has a history

of filing frivolous and repetitive filings. With the exception of this case, plaintiff has no prior history of filing frivolous pleadings. Thus, the undersigned finds that imposing filing restrictions on plaintiff is not appropriate.

<u>Participation in Seminars or Other Educational Programs</u>

The Rule 11 Advisory Committee Notes ("Notes") list several non-monetary sanctions a court may consider in determining an appropriate Rule 11 sanction; one of which is to require the violator to participate in seminars or other educational programs.[5] Fed. R. Civ. P. 11 Advisory Committee Notes. The Notes also reiterate that a court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person. <u>Id.</u>

Courts have employed several variations of nonmonetary sanctions that derive from participation in seminars or other educational programs. For example, the Third Circuit has endorsed directing Rule 11 offenders to attend a seminar in federal practice and procedure, as well as ordering offending attorneys to circulate a copy of the order in which their pleadings were criticized throughout their law firm, as appropriate nonmonetary sanctions under certain circumstances. <u>Gaiardo v. Ethyl Corp.</u>, 835 F.2d 479, 482 (3d Cir. 1987). Additionally, the United States District Court for the Western District of Oklahoma has ordered at least one Rule 11 violator to submit to the Oklahoma Bar Journal for publication an article pertaining to the violator's misconduct. <u>Johnson v. Gov't Emps. Ins. Co.</u>, No. CIV-07-868-M, Dkt. 74 (W.D. Okla. Apr. 14, 2008). In <u>Johnson</u>, the district court further directed the violator to include in his

---

[5] The Advisory Committee Notes also list the following non-monetary sanctions: striking the offending paper; issuing an admonition, reprimand, or censure; and referring the matter to disciplinary authorities.

article his reason for writing it and to tailor the article toward young attorneys. Id. at 2.

The undersigned finds the Western District's approach in Johnson particularly persuasive in this instance, as plaintiff's misconduct gives rise to an invaluable learning opportunity for both newly admitted attorneys and law students. Further, the sanction in Johnson directly addresses the Rule 11 requirement that a sanction be sufficient to deter the *violator's* conduct in addition to comparable conduct by *others similarly situated*. The undersigned accordingly recommends that, within six months of the Court's order, plaintiff write a letter to the Dean of The University of Tulsa College of Law and formally offer to speak to law students during each of the next four semesters about the dangers of filing a lawsuit without having an experienced attorney review it. The letter should be submitted to the undersigned for approval and, in its final form, filed in this case. Prior to speaking to the students, plaintiff should prepare a script, or detailed outline, also to be approved by the undersigned.

## **RECOMMENDATION**

NPC requests that the Court impose sanctions against plaintiff in the amount of $8,350.00 for defending against plaintiff's baseless claims. The undersigned reviewed NPC's affidavits and billing records and finds them to be reasonable. This is not to say, however, that plaintiff's sanction should fully reimburse NPC's costs in defending this matter. On the contrary, the White factors suggest that plaintiff's sanction should be significantly less than $8,350.00. First, although plaintiff indicated he would file a similar suit against NPC again (but after an appropriate investigation), he openly admitted his mistake to the undersigned. Second, as a new attorney who recently graduated from law school and who is currently building a solo law practice, plaintiff is unable to pay $8,350.00. Third, plaintiff's inexperience in the actual practice of law weighs in favor of a lesser sanction. Fourth, the publication of the Court's order granting

NPC's motion for sanctions serves as an already existing future deterrent which favors a lesser sanction. Based on the foregoing, the undersigned recommends that the Court sanction plaintiff in the amount of $3,000.00. This amount should adequately deter any similar future misconduct, consistent with the purposes of Rule 11.

In addition to the monetary sanction, the undersigned recommends that plaintiff be directed to offer, in writing, to speak to law students at The University of Tulsa College of Law about the ramifications and seriousness of his misconduct and how it could have been avoided. In addition to deterring plaintiff from engaging in future misconduct, this sanction is also consistent with the Rule 11 purpose to deter future misconduct of others similarly situated. In this case, others similarly situated include law students, licensed legal interns, and newly admitted attorneys.

Based on the foregoing, the undersigned recommends that the Court sanction plaintiff in the amount of $3,000.00 for filing baseless claims against NPC. The undersigned further recommends that the Court require plaintiff to offer to speak to law students at The University of Tulsa College of Law as outlined herein.

## **OBJECTION**

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by May 23, 2016.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify

>     the recommended disposition; receive further evidence; or return the matter to
>     the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 9th day of May, 2016.

_____
T. Lane Wilson
United States Magistrate Judge